UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CURLETA EMRANI,** | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 3:17-cv-00981-VAB |
| | : | |
| **v.** | : | |
| | : | |
| **FAIRFIELD FAMILY CARE, LLC,** | : | |
| *Defendant* | : | DECEMBER 21, 2017 |

## SECOND JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE

Plaintiff Curleta Emrani ("Plaintiff") and Defendant Fairfield Family Care, LLC ("Defendant") file this Joint Motion for Approval of FLSA Settlement. The parties request that this Court approve the settlement agreement on the papers, or in the alternative, schedule and conduct a telephonic conference call so that counsel can review the terms of the settlement in sufficient detail in order for this Court to determine whether the settlement is fair and reasonable.

The Parties previously filed a Motion for Settlement Approval, with supporting Exhibits (Docket Entry No. 12), which the Court denied without prejudice on account of the inclusion of too broad a release in the proposed settlement agreement, along with too broad a class action waiver. (Docket Entry No. 18). As the parties have mutually revised the settlement agreement to be in accordance with the Court's previous Order, the Parties again request that the Court approve the same.

In support of this Motion, the parties state as follows:

1. In this action, Plaintiff alleges that Defendant failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(a) and Connecticut wage and hour laws, Conn. Gen. Stat. §§ 31-58 et seq., 31-71a et seq.,

and 31-76b et seq., retaliated against Plaintiff in violation of FLSA, 29 U.S.C. § 215(a)(3), and was unjustly enriched by its failure to pay Plaintiff all of the wages to which she is entitled.

2. The parties continue to dispute the amount of overtime wages and other relief due to Plaintiff (if any), and Defendant has denied and continues to deny each and every claim made by Plaintiff in the action. However, the parties desire to fully and finally resolve any and all disputes regarding any and all of Plaintiff's claims without the expense of further litigation.

3. In furtherance of the parties' mutual desire to resolve their dispute without further litigation between them, they propose entering into an Agreement and General Release (the "Agreement"), a copy of which is appended hereto as EXHIBIT A.

4. Parties may settle FLSA claims through a private stipulated dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) with either the approval of the district court or the Department of Labor. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 200 (2d Cir. 2015).

5. The parties have exchanged information and have had numerous conversations regarding the merits of this lawsuit.

6. The parties represent to the Court that the Agreement to which they have entered is: (a) is fair to all parties; (b) reasonably resolves a bona fide disagreement between the parties with regard to the merits of Plaintiff's claims; and (c) demonstrates a good faith intention by the parties that Plaintiff's claims for liability and damages be fully and finally resolved and not re-litigated in whole or in part at any point in the future.

7. In support of the Parties' mutual contention that the agreed-upon

settlement is fair and reasonable, Plaintiff has attached hereto as <u>EXHIBIT B</u> a Damages Analysis, which depicts Plaintiff's claimed damages, and the extent of Defendant's exposure. Said analysis depicts Plaintiff's claimed unpaid wages in the amount of $11,464.11, and back pay following her claimed termination in the amount of $7,255.51. In light of these figures, the Parties represent that the settlement figure contemplated in the amount of $17,500.00 is facially reasonable.

8. In further support of the Parties' contention that the agreed-upon settlement is fair and reasonable, the Parties represent that the above figure adequately accounts for the uncertainties and *bona fide* factual and legal disputes between them, including but not limited to the following issues which remain contested:

  a. Whether Plaintiff signed and is bound by an independent contractor agreement;

  b. Whether Plaintiff signed and is bound by an agreement to arbitrate her claims;

  c. Whether Plaintiff was a non-exempt employee or an independent contractor;

  d. The number of hours Plaintiff worked; and

  e. Whether Plaintiff was terminated in retaliation for protected activity.

9. The parties respectfully request that the Court approve the agreement on the papers, or in the alternative, schedule a telephonic conference call with counsel for the Parties so that counsel can review the terms of the settlement and the Parties respective contentions in sufficient detail in order for the Court to rule upon the Joint Motion for Approval of FLSA Settlement.

10. In anticipation of the Court's approval, the Parties have filed a Stipulation of Dismissal with Prejudice.

WHEREFORE, the parties move for the approval of the Settlement Agreement between them.

| PLAINTIFF, | DEFENDANT |
|---|---|
| CURLETA EMRANI | FAIRFIELD FAMILY CARE, LLC |
| By: /s/ | By: /s/ |
| Matthew D. Paradisi, ct29915 | Stuart M. Katz, ct15914 |
| Cicchiello & Cicchiello, LLP | Cohen & Wolf, P.C. |
| 364 Franklin Avenue | 1115 Broad St., Po Box 1821 |
| Hartford, CT 06114 | Bridgeport, CT 06604 |
| Tel: (860) 296-3457 | Tel: (203) 368-0211 |
| Fax: (860) 296-0676 | Email: skatz@cohenandwolf.com |
| Email: mparadisi@cicchielloesq.com | Its Attorneys |
| Her Attorneys | |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 21st day of December, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties who have appearances as of the time of this filing, by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                /s/
                                        Matthew D. Paradisi, Esq. (ct29915)

# EXHIBIT A

## **AGREEMENT AND GENERAL RELEASE**

This Agreement and General Release ("Agreement") is entered into by and between **Fairfield Family Care, LLC** (referred to throughout this Agreement as "Company" or "**Fairfield**"), and **Curleta Emrani**, her heirs, executors, administrators, successors and assigns (collectively referred to throughout this Agreement as "Employee" or "Ms. Emrani") (each a "Party" and collectively the "Parties").

1. **Pending Claim.** Ms. Emrani commenced a civil action against Fairfield, now in United States District Court for the District of Connecticut entitled *Curleta Emrani v. Fairfield Family Care, LLC*, Civil Case No. 3:17-cv-00981-VAB (referred to throughout this Agreement as the "Action"). Fairfield and Ms. Emrani are desirous of settling the Action and all other matters related to Ms. Emrani's work for or employment with Fairfield, including, but not limited to, the Action.

2. **Consideration.** In consideration for Ms. Emrani's signing this Agreement and complying with its terms, Fairfield agrees to pay Ms. Emrani the total sum of **SEVENTEEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($17,500.00)** (the "Settlement Proceeds"), as follows, after the latter of (i) counsel for Fairfield's receipt of this Agreement signed by Ms. Emrani and (ii) Court approval of the Parties' joint stipulation of dismissal with prejudice and dismissal with prejudice of the Action, all payable as follows:

   a. Within 60 days of the Court's approval of settlement of the Action:

      i. One check payable to "Cicchiello & Cicchiello, LLP" in the amount of SIX THOUSAND FOUR HUNDRED SEVENTY-THREE AND 35/100 DOLLARS ($6,473.35), representing attorneys' fees and costs, for which Fairfield will issue an IRS Form 1099 to Cicchiello & Cicchiello, LLP.

      ii. One check payable to "Curleta Emrani" in the amount of THREE THOUSAND FIVE HUNDRED TWENTY-SIX AND 65/100 ($3,526.65), representing claimed lost wages, and for which Fairfield will issue an IRS Form 1099 to Ms. Emrani.

   b. Within 90 days of the Court's approval of settlement of the Action:

      i. One check payable to "Curleta Emrani", in the amount of TWO THOUSAND FIVE HUNDRED AND 00/100, representing claimed lost wages, and for which Fairfield will issue an IRS Form 1099 to Ms. Emrani.

   c. Within 120 days of the Court's Approval of settlement of the Action:

      i. One check payable to "Curleta Emrani", in the amount of TWO THOUSAND FIVE HUNDRED AND 00/100, representing claimed lost wages, and for which Fairfield will issue an IRS Form 1099 to Ms. Emrani.

   d. Within 150 days of the Court's Approval of settlement of the Action:

      i.    One check payable to "Curleta Emrani", in the amount of TWO THOUSAND FIVE HUNDRED AND 00/100, representing claimed lost wages, and for which Fairfield will issue a W-2 to Ms. Emrani.

The Parties agree that no Settlement Proceeds will be released or delivered to Cicchiello & Cicchiello, LLP or Ms. Emrani until after the Court has confirmed its approval of this Agreement and has dismissed the Action with prejudice.  To the extent the Court review and approval process extends beyond the dates set forth above, the Parties to this Agreement acknowledge that counsel for Fairfield will hold the Settlement Proceeds until the Court approval is completed and without regard to period or delay caused by the Court's approval process.

The Company makes no representation concerning the taxability of the Settlement Proceeds, and Ms. Emrani agrees that she has not relied upon any representation made by the Company or any of its representatives concerning the tax treatment of the Settlement Proceeds.  Ms. Emrani shall be responsible to pay and agrees to pay all required taxes that are owed by her under federal, state and local laws.  For tax purposes, the payments made to Ms. Emrani hereunder will have been considered to have been made during the 2017 and 2018 calendar years.  Ms. Emrani agrees to defend and forever hold harmless the Company from all liability of any nature to any state or federal department, service, agency or entity, resulting from or relating to any failure by the Company to withhold and/or pay any tax with respect to the payments set forth above, although nothing in this Agreement relieves the Company from any of its obligations to pay the employer's share of any required withholding.

    3.    **No Consideration Absent Execution of this Agreement.**  Ms. Emrani understands and agrees that she would not receive the monies and/or benefits specified in Paragraph 2, except for her execution of this Agreement and fulfillment of the promises contained herein.

    4.    **General Release, Claims Not Released and Related Provisions.**

    a.    **General Release of -Claims.**  Ms. Emrani knowingly and voluntarily releases and forever discharges, to the fullest extent permitted by law, Fairfield and its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from -all claims, known and unknown, asserted or unasserted, including any claim or any basis for recovering costs, fees or other expenses such as attorney's fees incurred in the Action, that she has or may have against Releasees as of the date of execution of this Agreement, including and specifically limited to any alleged violation of:
- The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*;
- The Connecticut Wage Hour and Wage Payment Laws;
- Any other federal, state or local law, regulation or ordinance governing wages or the payment of wage;

    b.    **Claims Not Released.**  Employee is not waiving any rights she may have to: (i) her own vested accrued employee benefits under any Fairfield health, welfare or retirement benefit plans; (ii) benefits or the right to seek benefits under applicable workers' compensation or unemployment compensation statutes; (iii) pursue claims that by law cannot be waived by signing this Agreement; or any claim not specifically released herein.

      c. **Governmental Agencies.** Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state or local government agency, nor does anything in this Agreement preclude, prohibit or otherwise limit in any way Employee's rights or abilities to contact, communicate with, report matters to or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

      5. **Acknowledgements and Affirmations.** Employee affirms that she has not filed or caused to be filed, and is not presently is a party to, any claim against Fairfield or any other Releasee, except for the Action.

      Employee affirms that she has not divulged any proprietary or confidential information of Fairfield and will continue to maintain the confidentiality of such information consistent with Fairfield's policies and Employee's agreement(s) with Fairfield and/or common law.

      Employee affirms that she has returned all of Fairfield's property, documents and/or any confidential information in her possession or control. Employee also affirms that she is in possession of all of her property that she had at Fairfield's premises and that Fairfield is not in possession of any of her property.

      Employee affirms that she has not been retaliated against for reporting any allegations of wrongdoing by Fairfield or its officers, including any wage and hour violations as alleged in the Action.

      Employee affirms that she has reported all hours worked as of the date she signs this Agreement and that she hereby acknowledges and agrees that, after receipt of Settlement Proceeds set forth herein, that she has been paid in full for all time worked through the date of this Agreement and is not entitled to any other form of compensation, including, but not limited to, any wages, bonuses, commissions, gratuities, payouts, severance pay, vacation pay, or other benefits, damages, attorneys' fees or costs from the Company through the date of the execution of this Settlement Agreement, except as specifically provided in this Agreement.

      Employee affirms that she has neither requested nor been denied any leave to which she was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws. Employee affirms further that she has no known workplace injuries or occupational diseases.

      Employee agrees that, because of circumstances unique to her and irreconcilable differences between her and Fairfield, she shall not apply in the future for employment with Releasees. Employee agrees that any application for employment to Releasees may be denied based upon this Agreement without liability of any kind.

      6. **Dismissal of Action.** The Parties agree to execute and file any and all documents necessary to effectuate dismissal with prejudice of the Action.

      7. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for

any purpose as an admission by Fairfield or by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind. Rather, the Company enters into this Agreement to avoid further litigation and to resolve and settle all disputes with Ms. Emrani. The Parties understand and agree that neither this Agreement, nor the negotiations that preceded it, shall be used as evidence with respect to the claims asserted in the Action or in any other proceeding or dispute whatsoever.

8. **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the State of Connecticut without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

9. **Amendment.**  This Agreement may not be modified, altered or changed except in writing and signed by both Parties whether specific reference is made to this Agreement.

10. **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that she has not relied on any representations, promises or agreements of any kind made to her in connection with her decision to accept this Agreement, except for those set forth in this Agreement.

11. **Non Disparagement.**  The Parties agree that they shall not make, or encourage any other individual to make any public or private "disparaging" comments, including but not limited to written, verbal, or electronic communications, about the other Party or any of the Releasees to any individual or entity and/or to take any direct action that would "disparage" the other Party or any of the Releasees.  For purposes of this Agreement, the term "disparage" and/or "disparaging" shall mean and include any statement which might adversely affect the reputation of Employee or Fairfield/Releasees, or which accuses the aforesaid individuals or entities of acting in violation of any law or government regulation or of condoning any such action, or otherwise acting in an unprofessional, dishonest, disreputable or improper manner.  However, this restriction shall not prohibit Employee from (i) making truthful statements regarding her experience litigating this matter or (ii) enforcing her rights or remedies under this Agreement

12. **Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their successors and assigns.

13. **Neutral Reference.**  Unless the Company is otherwise required by law to provide a more comprehensive disclosure, upon request from a prospective employer or other entity made to Fairfield, the Company will provide a neutral reference confirming the Employee's dates of employment and position held and will further state that it is Company policy to only provide this information.

14. **Arm's Length Transaction; Materiality of Terms.**  The Parties have

negotiated the terms and conditions of this Agreement at arm's length, through authorized counsel. No term of this Agreement will be construed against either Party, as this entire Agreement is the result of arm's-length negotiations between the parties. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

15. **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

16. **Construction.** The terms and conditions of this Agreement have been negotiated by mutual agreement of the Parties. Therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any drafting Party.

17. **Effective Date.** This Agreement shall become effective following its execution by the Parties and approval by the Court.

18. **Attorney's Fees and Costs.** Except as specifically provided in Paragraph 2 of the Agreement, each Party shall be solely responsible for its or their own attorneys' fees and costs in connection with the Action.

19. **Fair and Reasonable Settlement.** The Parties agree that this Agreement and the payments called for by this Agreement are fair and reasonable to the Parties, and that the payments and the other terms of this Agreement constitute a fair and reasonable settlement of the claims made in the Action. The Parties also agree that there was no undue influence, duress, overreaching, collusion or intimidation in reaching this Agreement, and that both Parties have sought and received the advice of competent counsel as to the meaning and effect of each of the terms of this Agreement before agreeing to sign it.

20. **Severability.** In the event that any provision of this Agreement or the application thereof should be held to be void, voidable, unlawful or, for any reason, unenforceable, the remaining portion and application shall remain in full force and effect, and to that end the provisions of this Agreement are declared to be severable.

21. **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed as an original but all of which shall constitute one and the same instrument. Signature pages may be executed by "wet" signature *(i.e.,* using pen and paper) or electronic signature (e.g., via DocuSign). The executed signature pages may be delivered using facsimile or electronic means, including pdf or similar file type transmitted via email, cloud-based server, ore-signature technology.

The Parties hereto freely, knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**CURLETA EMRANI**

By: _____
      Curleta Emrani

Date: _____

**FAIRFIELD FAMILY CARE, LLC**

By: _____
      Gary Ferone, President

Date: _____

# EXHIBIT B

**Curleta Emrani  - Damages Analysis as of 8/10/2017**

| | | | | |
|---|---|---|---|---|
| **FLSA - UNPAID WAGES** | | | | |
| Hourly Rate | | $10.10 | Imputed Minimum Wage | |
| Average Hours Per Week | | 84 | (Estimated) | |
| Equals Average Weekly Wage | | $1,070.60 | | |
| Less Average Paid Wages | | $840.00 | (Per Pay Stubs) | |
| Equals Unpaid Weekly Wages | | $230.60 | | |
| Earliest Accrual Date | | 4/18/16 | | |
| Date of Termination | | 4/1/17 | | |
| No Weeks of Unpaid Wages. | | 50 | Weeks Unpaid | |
| **Net Unpaid Wages** | | | | **$11,464.11** |
| **Unpaid Wages x 2, per Conn. Gen. Stat. §31-72, 29 U.S.C. §216(b)** | | | | **$22,928.23** |
| | | | | |
| **FLSA Retaliation / Wrongful Termination - Lost Wages** | | | | |
| Average Earned Weekly Wage | | $1,070.60 | | |
| Date of Termination | | 4/1/17 | | |
| Present | | 8/10/17 | | |
| Weeks Since Termination | | 19 | | |
| **Subtotal Lost Wages to Date** | | | | **$20,035.51** |
| | | | | |
| **Mitigation** | | | | |
| Connecticut In-Home Assistants, Trumbull, CT | 5/31/2017 to | 8/10/2017 | (Approximate) | |
| No. Weeks | | 23.67 | | |
| Average Weekly Wage | | $540.00 | | |
| **Subtotal Mitigation** | | | | **$12,780.00** |
| | | | | |
| **NET BACK PAY OWED TO DATE (Lost Wages to Date, Less Mitigation)** | | | | **$7,255.51** |
| | | | | |
| **Non-Economic Damages** | | | | |
| FLSA, Punitive Damages, Estimated, TBD by Factfinder | | | $11,464.11 | |
| *See Sines v. Serv. Corp. Int'l,* 2006 WL 3247663, at *3 (S.D.N.Y. Nov. 8, 2006) | | | | |
| **Subtotal Non-Economic Damages** | | | | **$11,464.11** |
| | | | | |
| **Costs & Attorneys' Fees To Date** | | | | |
| Estimated Costs to Date | | | $675.00 | |
| Filing Fee | | $350.00 | | |
| Service | | $100.00 | | |
| Administrative Fees | | $225.00 | | |
| Attorneys' Fees | | | $7,000.00 | |
| Hourly Rate Per Retainer | | $350.00 | | |
| Estimated Attorney Hours | | 20 | | |
| **Subtotal Costs & Attorneys' Fees** | | | | **$7,675.00** |
| | | | **TOTAL:** | **$49,322.86** |