## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CURLETA EMRANI
     Plaintiff,

     v.

FAIRFIELD FAMILY CARE, LLC,
     Defendant.

No. 3:17-cv-00981 (VAB)

## RULING ON PARTIES' JOINT MOTION FOR SETTLEMENT APPROVAL

Curleta Emrani ("Plaintiff") filed this lawsuit in state court, seeking compensation on four separate counts: failure to pay owed wages, minimum wage, or overtime wages under the Fair Labor Standards Act ("FLSA"); retaliation under FLSA; nonpayment of wages in violation of Connecticut's wage and hour laws; and unjust enrichment. *See* Complaint, ECF No. 1-2. The parties now submit a second settlement agreement for the Court's approval. *See* Second J. Mot. for Settlement Approval, ECF No. 19; *see also* Agreement and General Release ("Settlement Agreement"), Second J. Mot. for Settlement Approval, Ex. A., ECF No. 19.[1]

For the reasons stated below, the joint motion is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Ms. Emrani worked as a live-in caregiver for Fairfield Family Care, beginning in August, 2014. Compl. ¶¶ 3-5. She alleges that the Defendant only paid her a per diem rate of $100, which failed to account for the total amount of time she worked. *Id.* ¶ 6. She alleges that the Defendant prepared false statements regarding the number of hours she had worked following a Department

---

[1] The Court previously declined to approve a prior settlement agreement in this case. *See* Ruling on Parties' Joint Motion for Settlement Agreement ("December Ruling"), ECF No. 18.

of Labor investigation. *Id.* ¶¶ 9-12. She claims that she refused to sign these false statements and she was subsequently terminated on April 1, 2017. Ms. Emrani then filed this lawsuit in state court, seeking lost wages, damages, costs, attorney fees. Defendant removed to this Court and filed an answer to the Complaint on June 21, 2018. ECF No. 11.

On August 17, 2017, the parties submitted a proposed settlement agreement that would provide plaintiff with $17,500 inclusive of attorney fees. J. Mot. for Settlement Approval, ECF No. 12. The parties represented that they have a "bona fide disagreement" on several fronts and they have a "mutual desire to resolve their dispute without further litigation." *Id. at* ¶ 3.

This Court declined to approve the settlement, expressing concern with two provisions of the agreement. *See generally* December Ruling. First, the Court noted that "[t]he Settlement Agreement at issue here includes a broad release section" that "seems to sweep beyond the release of the type of claim settled in the FLSA action . . . ." *Id.* at 3-4. Second, the Court declined to approve the class waiver provision, which "appear[ed] to sweep beyond a FLSA collective action" and therefore implicate similar concerns as the release waiver. *Id.* at 4-5. It instructed the parties to either file a new settlement agreement within 30 days or notify the Court of their intent to abandon the settlement and continue to litigate. *Id.* at 5.

The parties timely filed a new agreement addressing the Court's concerns and moved for approval. They seek approval "[a]s the parties have mutually revised the settlement agreement to be in accordance with the Court's previous Order . . . ." Second J. Mot. for Settlement Approval at 1. The parties note that they "continue to dispute the amount of overtime wages and other relief due to Plaintiff (if any), and Defendant has denied and continues to deny each and every claim made by Plaintiff in the action." *Id.* at 2. They maintain again that the settlement amount,

which remains $17,500.00, is "facially reasonable" and settles the *bona fide* factual and legal disputes between them . . . ." *Id*. at 3.

## II.     STANDARD OF REVIEW

The Fair Labor Standards Act "is a uniquely protective statute." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). In light of these protections, courts in the Second Circuit are required to approve settlement agreements where the parties seek dismissal with prejudice of FLSA claims. *Id*. at 206 ("Thus, Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect.").

The Second Circuit did not articulate a precise test in *Cheeks*, instead referencing several different, non-exclusive considerations district courts had previously used in evaluating settlement agreements. *See Cheeks,* 796 F.3d. at 206 (noting district courts have examined FLSA settlements to determine if the release provision is overly broad, the settlement includes an overly restrictive non-disparagement clause, and whether attorneys fees are reasonable).

## III.    DISCUSSION

The parties have submitted a second settlement agreement for the Court's approval. The second agreement addresses the two concerns voiced by the Court in its December Ruling, and the Court see no further issues that would prevent approval. Therefore, the Court will approve the settlement agreement.

### A.     Release Provision

In its previous ruling, the Court noted that "[t]he broad language of the clause seems to sweep beyond the release of the type of claim settled in the FLSA action, especially given the inclusion of past and future claims under tort, common law, or federal, state, or local human

3

rights law." December Ruling at 4. Courts within the Second Circuit have generally rejected such

agreements. *See, e.g., Panganiban v. Medex Diagnostic & Treatment Ctr., LLC*, No. 15-cv-2588

(AMD)(LB), 2016 WL 927183, at *3 (E.D.N.Y. Mar. 7, 2016) (approving of broad waiver

including human rights claims because plaintiff had pled those claims in the original complaint

and "at the very least, the plaintiff is aware of her claims arising under these statutes.");

*Thallapaka v. Sheridan Hotel Assocs. LLC,* No. 15-cv-1321, 2015 WL 5148867, at *1 (S.D.N.Y.

Aug. 17, 2015) ("This Court will not sanction releases in FLSA cases where the parties purport

to waive 'practically any possible claim against the defendants, including unknown claims and

claims that have no relationship whatsoever to wage-and-hour issue.'") (quoting *Camacho v.*

*Ess–a–Bagel, Inc*., 14-cv-2592 (LAK), 2015 WL 129723, at *1 (S.D.N.Y. Jan. 9, 2015)).

The settlement agreement currently before the Court, however, limits the release

provision. *See* Settlement Agreement ¶ 4(a). Ms. Emrani agrees to release any claims "including

and specifically limited to" FLSA claims, Connecticut wage and hour claims and "any other

federal, state or local law, regulation or ordinance governing wages or the payment of wage . . .

." *Id.* The release provision is limited to the claims alleged in the Complaint, and is therefore

permissible under *Cheeks*.

**B.     Class Waiver**

The Court initially expressed skepticism about the scope class waiver provision included

in the original agreement. *See* December Ruling at 5 ("The Settlement Agreement at issue here,

however, appears to sweep beyond a FLSA collective action. . . . Such broad language would

therefore seem to implicate the same concerns as the release provision addressed above. The

Court cannot approve the Settlement without some limitation of the class waiver provision.");

*see also Yunda v. SAFI-G*, Inc., 15-cv-8861 (HBP), 2017 WL 1608898, at *4 (S.D.N.Y. Apr. 28,

2017) (approving settlement agreement where class action waiver involved any putative or certified class, collective or multi-party action or proceeding against any Releasee under the FLSA" because "the waiver is limited to participation" in a proceeding under the FLSA).

The Agreement no longer includes a class action waiver, and therefore is not an impediment to court approval.

### C.   Non-Disparagement Clause

Courts in the Second Circuit have often carefully examined non-disparagement clauses when reviewing a FLSA settlement under *Cheeks*. *See, e.g.*, *Lopez v. Nights of Cabiria, LLC*, 96 F.Supp. 3d 170, 180 n. 65 (S.D.N.Y. 2015); *Galindo v. East County Louth Inc.,* No. 16 CIV. 9149 (KPF), 2017 WL 5195237, at *5 (S.D.N.Y. Nov. 9, 2017). Courts generally hold that "not every non-disparagement clause in an FLSA settlement is *per se* objectionable. . . . But insofar as [an agreement] would bar plaintiffs from making 'any negative statement' about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case." *Lopez*, 94 F.Supp. 3d at 180 n. 65.

The Settlement Agreement at issue here contains a non-disparagement clause. It states:

> The Parties agree that they shall not make, or encourage any other individual to make any public or private 'disparaging' comments, including but not limited to written, verbal, or electronic communications about the other Party or any of the Releasees to any individual or entity and/or to take any direct action that would 'disparage' the other party or any of the Releasees. For the purposes of this Agreement, the term "disparage" and/or 'disparaging' shall mean and include any statement which might adversely affect the reputation of Employee or Fairfield/Releasees, or which accuses the aforesaid individuals or entities of acting in violation of any law or government regulation or of condoning such action, or otherwise active in an unprofessional, dishonest, disreputable or improper manner. However, this restriction shall not prohibit Employee from (i) making truthful statements regarding her experience litigating this matter or (ii) enforcing her rights or remedies under this Agreement.

Settlement Agreement ¶ 11. The agreement specifically allows Ms. Emrani to make truthful statements about this litigation, and is therefore permissible under *Cheeks*.

### D.   Attorney Fees

The attorney fees provision also appears to be reasonable. Courts in the Second Circuit have generally accepted as reasonable fees that represent no more than one-third of the total award. *See, e.g.*, *Martinez v. Gulluoglu LLC*, 15-cv-2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("Barring unusual circumstances not present here, courts in this District have declined to award fees constituting more than one-third of the total settlement amount in an FLSA action."); *Flores v. Food Express Rego Park, Inc*., 15-cv-1410 (KAM)(SMG), 2016 WL 386042, at *4 (E.D.N.Y. Feb. 1, 2016) (rejecting fees constituting 40 percent of total settlement recovery and reducing to one-third); *Thornhill v. CVS Pharmacy*, *Inc*., 13-cv-5507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (noting in *FLSA* action that courts in the Second Circuit "typically approve attorney's fees that range between 30 and 33" percent and collecting pre-*Cheeks* cases).

Here, Ms Emrani would be entitled to receive $17,500 under the settlement; her counsel would receive $6,473.35. The total award would therefore equal $23,973.35. The attorneys' fee provisions would represent approximately twenty-seven per cent of the total, below the one-third threshold adopted by other courts.

Additionally, counsel has submitted records documenting an estimation of the number of hours Ms. Emrani's lawsuit would have required, as well as the hourly rate of her counsel. Such documentation is necessary under *Cheeks*. *See, e.g.*, *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("Indeed, after Carey there are few examples of this court permitting a district court to award fees in the absence of full contemporaneous records. Where we have allowed for

such a recovery, counsel has always maintained at least some contemporaneous records.");

*Golan v. Deutsche Bank Sec. Inc*., 15-cv-221 (PAE), 2015 WL 13322121, at *1 (S.D.N.Y. Dec. 29, 2015) (rejecting FLSA settlement agreement where documentation was lacking, including "any documentation demonstrating the reasonableness of the requested attorneys' fees (including contemporaneous time records and information regarding the hourly rate for all attorneys and staff who worked on this case.)").

## III.    CONCLUSION

For the reasons discussed above, the parties' Second Joint Motion for Settlement Approval is therefore **GRANTED.**

SO ORDERED this 28th day of February at Bridgeport, Connecticut.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE